UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | NO. CR-16-0199 YGR |
| VS. | FRIDAY, JUNE 3, 2016 |
| DISCOVERY SALES, INC., | OAKLAND, CALIFORNIA |
| DEFENDANT. | CHANGE OF PLEA |

**BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**FOR PLAINTIFF:**
BRIAN J. STRETCH, ESQUIRE
UNITED STATES ATTORNEY
1301 CLAY STREET, SUITE 340S
OAKLAND, CALIFORNIA 94612
BY: JOHN HEMANN,
ASSISTANT UNITED STATES ATTORNEY

**FOR DEFENDANT:**
KASOWITZ, BENSON, TORRES & FRIEDMAN
101 CALIFORNIA STREET, SUITE 2300
SAN FRANCISCO, CALIFORNIA 94111
BY: WILLIAM A. GOODMAN, ESQUIRE
LYN R. AGRE, ESQUIRE

FARELLA BRAUN + MARTEL
235 MONTGOMERY STREET
SAN FRANCISCO, CALIFORNIA 94104
BY: WILLIAM P. KEANE, ESQUIRE

**REPORTED BY:**
DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

FRIDAY, JUNE 3, 2016 11:00 A.M.

P R O C E E D I N G S

**THE CLERK:** CALLING CRIMINAL ACTION 16-0199 UNITED STATES VERSUS DISCOVERY SALES, INC.

COUNSEL, PLEASE STATE YOUR APPEARANCES.

AND I JUST WANT TO LET THE COURT KNOW, THIS MORNING DURING THE ARRAIGNMENT, THE CASE -- THE GOVERNMENT'S MOTION TO UNSEAL THE CASE WAS GRANTED SO I DIDN'T CALL IT AS A SEALED CASE.

**THE COURT:** ALL RIGHT.

**MR. HEMANN:** GOOD MORNING, YOUR HONOR. JOHN HEMANN FOR THE UNITED STATES.

**MR. GOODMAN:** GOOD MORNING, YOUR HONOR, WILLIAM GOODMAN FOR DISCOVERY SALES.

**MR. KEANE:** AND WILLIAM KEANE. GOOD MORNING.

**THE COURT:** GOOD MORNING.

ALL RIGHT, GENTLEMEN. I'VE TAKEN A LOOK AT YOUR REQUEST TO ENTER A PLEA TODAY UNDER AN 11(C)(1)(C) AGREEMENT. GIVEN THE NATURE OF AN 11(C)(1)(C) AND THE COURT'S ABILITY, AS YOU ALL KNOW SINCE I'M TALKING TO LAWYERS HERE AND NOT -- I AM TALKING TO ALL LAWYERS, CORRECT?

**MR. HEMANN:** YES, YOUR HONOR.

**MR. KEANE:** YES, YOUR HONOR.

**THE COURT:** I'M NOT GOING TO GO THROUGH THE PROCESS OF TAKING A PLEA UNLESS I'M PREPARED TO ACCEPT IT, AND I DON'T HAVE ENOUGH INFORMATION TO ACCEPT THIS PLEA YET. SO I'M NOT

GOING TO BE TAKING YOUR PLEA TODAY.

I'M GOING TO GO THROUGH WHAT I HAVE AND WHAT I HAVE CONSIDERED, AND THEN TELL YOU WHAT I NEED. AND THEN I CAN DECIDE AFTER FURTHER REFLECTION WHETHER OR NOT IT'S ACCEPTABLE.

IN TERMS OF THE CALCULATIONS, I WOULD AGREE WITH YOU THAT WE ARE DEALING WITH A BASE OFFENSE LEVEL OF SEVEN UNDER THE SENTENCING GUIDE SECTION 2B1.1A1 AND THAT THE CALCULATION INCREASES 24 LEVELS UNDER 2B1.B1M.

I WOULD ALSO AGREE THAT THE CULPABILITY SCORE STARTS AT A BASE LEVEL OF FIVE UNDER SECTION 8C2.5A AND THEN IS INCREASED ONE LEVEL UNDER 8C2.5B5 AND THEN DECREASE TWO LEVELS UNDER 8C2.5G2, WHICH GIVES A CULPABILITY SCORE OF FOUR AND A FINE MULTIPLIER OF .8 TO 1.6 UNDER SECTION 8C2.6.

WHERE I LACK SUFFICIENT INFORMATION IS ON YOUR REQUEST THAT I APPLY A DOWNWARD DEPARTURE OF FOUR LEVELS. IF I APPLY NO DEPARTURE WHATSOEVER, THEN THE TOTAL OFFENSE LEVEL HERE IS A 31 WITH A BASE FINE OF 25 MILLION AND A RANGE OF 20 TO 40 MILLION UNDER THE APPROPRIATE CALCULATION.

IF I APPLY A ONE-LEVEL DOWNWARD DEPARTURE, THEN THE BASE OFFENSE OR THE BASE FINE AMOUNT IS 20 MILLION WITH A RANGE OF 16 MILLION TO 32 MILLION.

IF I PROVIDED YOU WITH A DOWNWARD DEPARTURE -- LET'S SEE. IF I WAS AT A LEVEL 29. SO THE FIRST ONE, THE FIRST CALCULATION WOULD BE NO DEPARTURE WHATSOEVER.

SO TO LEVEL 30, I'M APPLYING ONE LEVEL DOWN AT A LEVEL 29. APPLYING TWO LEVELS DOWN, I'M AT 15 MILLION WITH A RANGE OF 12 MILLION TO 24 MILLION.

FINALLY, IF I WENT THREE LEVELS DOWN INSTEAD OF FOUR, THEN I WOULD BE AT A BASE NUMBER OF 10 MILLION WITH A RANGE OF 8 MILLION TO 16 MILLION.

YOU ARE ASKING FOR A TOTAL OF FOUR LEVELS DOWN WHICH WOULD GIVE ME A BASE FINE AMOUNT OF 8.5 WITH A RANGE OF 6.8 TO 13.6, AND YOU ARE ASKING THAT I IMPOSE A FINE OF 8 MILLION WITH RESTITUTION OF 3 MILLION, EVEN THOUGH THE ACTUAL LOSS THAT CAN ACTUALLY BE CALCULATED TO FANNIE MAE AND FREDDIE MAC IS 3.456622, 3,346,622.

IN SUPPORT OF YOUR REQUEST THAT I DEPART FOUR LEVELS DOWN, YOU GIVE ME GENERIC STATEMENTS QUOTING TO SECTION ... COMMENT 20(C) OF SECTION 2B1.1 WHICH BASICALLY SAYS IT'S OVERSTATED WITHOUT ANY REASONABLE OR CALCULABLE BASIS FOR SAYING WHY IT'S OVERSTATED IN THE AMOUNT THAT YOU ARE SUGGESTING THAT IT IS.

I SUSPECT THAT YOU AGREED ON AN AMOUNT AND FIGURED OUT WHERE YOU NEEDED TO BE ON THE CALCULATIONS, AND THAT'S NOT SUFFICIENT FOR ME. AND IF THAT IS WHAT YOU'VE DONE, THEN I WANT TO HAVE SOME KIND OF EVIDENCE THAT SUGGESTS IT IS AN APPROPRIATE PLACE TO BE. BUT YOU'VE GIVEN ME NOTHING. AND SO IT IS NOT ACCEPTABLE.

NOW, I'VE NOT HAD AN OPPORTUNITY TO READ THE CASES THAT YOU'VE CITED THAT TALKS ABOUT THE USE OF THE REPORT THAT WAS

OBTAINED BY THE GOVERNMENT TO COME UP WITH SOME KIND OF CALCULATION IN THE FIRST INSTANCE, AND I DON'T EVEN HAVE THAT REPORT. SO I DON'T KNOW WHETHER THOSE CIRCUITS AND THE CASES FROM, I THINK IT'S THE SECOND CIRCUIT, AMONG OTHERS, WHETHER THEY ARE EMPLOYING DEPARTURES IN THE MANNER THAT YOU ARE SUGGESTING. BUT I CERTAINLY DON'T HAVE ENOUGH IN FRONT OF ME.

MR. HEMANN.

**MR. HEMANN:** COUPLE OF THINGS, YOUR HONOR.

THE AMOUNT OF THE DEPARTURE WAS A RESULT OF NEGOTIATIONS FIRST BETWEEN THE GOVERNMENT AND MR. SHAHID'S COUNSEL, AND THAT'S REFLECTED IN HIS PLEA AGREEMENTS, AND THEN SIMILAR DISCUSSIONS BETWEEN THE GOVERNMENT AND COUNSEL FOR DSI.

I UNDERSTAND COMPLETELY WHAT THE COURT IS SAYING ABOUT THE LACK OF SPECIFICITY, AND I WILL TELL THE COURT THE FOLLOWING:

PART OF THE PROBLEM IN COMING TO AN APPROPRIATE NUMBER IN THIS CASE IS THE LACK OF AVAILABLE INFORMATION IN -- THE LACK OF EASILY, READILY AVAILABLE INFORMATION AND POSSIBLY -- OR THE SIGNIFICANT LACK OF ANY INFORMATION AT ALL ABOUT WHERE THE MONEY WENT, FOR LACK OF A BETTER WORD.

WE'VE GOT A SITUATION -- IN THE NORMAL MORTGAGE FRAUD CASE, YOU TAKE THE LOAN AMOUNT, ESSENTIALLY, AND THEN WHEN THE HOUSE WAS ULTIMATELY SOLD, YOU SUBTRACT THAT AMOUNT FROM THE LOAN AMOUNT, AND THE DIFFERENCE IS THE LOSS. THAT'S ESSENTIALLY WHAT THE NINTH CIRCUIT HAS SAID TO DO, AND THERE ARE A LOT OF DIFFERENT PERMUTATIONS OF THAT IN INDIVIDUAL

CASES, BUT THAT'S THE BASIC FORMULA.

WE HAVE A SITUATION HERE IN WHICH A COUPLE OF DIFFERENT THINGS WERE HAPPENING THAT TAKES THIS OUT OF THE GARDEN VARIETY MORTGAGE FRAUD CASE. AND IT -- THOSE REASONS HAVE TO DO WITH THE WAY BUSINESS WAS DONE DURING THE LEAD UP TO THE MORTGAGE FRAUD CRISIS OR THE MORTGAGE CRISIS.

AND WE HAVE A SITUATION WHERE THERE WERE TWO PRIMARY LENDERS, PREFERRED LENDERS, I'M SORRY, WELLS FARGO AND JP MORGAN CHASE, AND THEY DID THE VAST MAJORITY OF THE LOANS FOR THE DISCOVERY SALES HOMES THAT ARE THE SUBJECT OF THIS CASE.

ONCE JP MORGAN AND WELLS FARGO DID A LOAN, THEY WOULD TYPICALLY SELL THE LOAN AND THE LOAN WOULD GET SOLD AND SOLD AND SOLD AND SOLD AND SECURITIZED. AND IT IS EASY -- IT IS UNFORTUNATELY EASY TO LOSE TRACK OF IT AND TO LOSE TRACK OF THE HOUSES AND WHEN THE HOUSES WERE ACTUALLY SOLD.

SO GETTING TO A NUMBER IN A CASE LIKE THIS IS EXTREMELY DIFFICULT AND EXTREMELY TIME-CONSUMING.

I CAN TELL YOUR HONOR THAT WE DID NOT COME TO, IN OUR NEGOTIATIONS WITH DSI, WE DID NOT COME TO A FINE NUMBER AT ALL AND REVERSE ENGINEER THE SENTENCING GUIDELINE CALCULATION TO MEET THAT FINE NUMBER. THE SENTENCING GUIDELINE CALCULATION WAS ESSENTIALLY -- IT WAS PART OF OUR NEGOTIATION FROM THE BEGINNING BECAUSE IT REFLECTS THAT WHICH WE DISCUSSED AND AGREED TO WITH MR. SHAHID.

SO IN WORKING WITH DISCOVERY, WE ACTUALLY NEGOTIATED A

NUMBER WITHIN THE GUIDELINE RANGE TO WHICH WE AGREED WITH MR. SHAHID IN LARGE PART BECAUSE THEIR LIABILITY IS, TO SOME DEGREE, DERIVATIVE OF MR. SHAHID'S.

**THE COURT:** RIGHT, BUT MR. SHAHID DOES NOT HAVE A (C)(1)(C) PLEA.

**MR. HEMANN:** I UNDERSTAND THAT, YOUR HONOR. AND I COMPLETELY UNDERSTAND THE DIFFERENCE HERE.

THE OTHER BIG ISSUE THAT INFORMED OUR DISCUSSIONS ON THE DEPARTURE WAS THE RELATIVE CULPABILITY OF THE BANK QUOTE "VICTIMS" UNQUOTE.

USING THE NINTH CIRCUIT FORMULATION, THERE IS AN ASSUMPTION BANKED INTO IT THAT THE RECIPIENT OF THE FALSE STATEMENT IS THE BANK AND THE BANK IS THE VICTIM, AND THE BANK LOST THIS AMOUNT OF MONEY. IN THIS CASE, THE BANKS ARE NOT FULLY WITHOUT BLAME.

**THE COURT:** AND I DON'T DISAGREE WITH THAT, MR. HEMANN. MY POINT IS, IS THAT THE FOUR-LEVEL DEPARTURE IS NOT TIED TO ANYTHING. THAT'S MY POINT. AND TO ACCEPT THIS WITHOUT SOME ... WITHOUT SOME RATIONALE IS DIFFICULT, AT LEAST NOT -- AT LEAST WITHOUT FURTHER REFLECTION.

**MR. HEMANN:** I UNDERSTAND.

**THE COURT:** SO THERE HAS TO BE SOME RATIONALE GIVEN.

**MR. HEMANN:** UNDERSTOOD, YOUR HONOR. AND I -- THE PARTIES CERTAINLY WILL SET ABOUT TO DO THAT, YOUR HONOR.

ONE OPTION THE COURT COULD TAKE HERE IS THE COURT COULD

ACCEPT -- TAKE THE (C)(1)(C) PLEA, AS THE COURT WOULD IN ANY CASE INVOLVING AN INDIVIDUAL, REFER IT TO PROBATION, AND HAVE US GO THROUGH THAT PROCESS. IT'S -- THAT POSSIBILITY IS CONTEMPLATED IN THE PLEA AGREEMENT WHERE THE PARTIES AGREE THAT WERE THE COURT NOT TO SENTENCE TODAY AND ACCEPT THE PLEA AGREEMENT --

**THE COURT:** I CAN SEND IT TO PROBATION FOR A REPORT, IN ANY EVENT.

**MR. HEMANN:** CORRECT.

**THE COURT:** THEY JUST WANT TO GET CREDIT FOR THE REPORT. AND I HAVE MS. GRIER HERE, AND SHE WILL TELL ME IF I CAN'T.

**MR. HEMANN:** IF THE COURT'S CONCERN IS FOCUSED PRIMARILY ON THE OBTAINING A MORE DETAILED DESCRIPTION OF THE BASIS FOR THE FOUR-LEVEL DOWNWARD DEPARTURE, I CERTAINLY THINK THAT WE CAN AND WILL DO THAT IN SHORT ORDER.

**MR. GOODMAN:** YOUR HONOR --

**THE COURT:** I'LL LET YOU IN A MINUTE.

WHERE'S THE ALBERT SEENO?

**MR. GOODMAN:** YOUR QUESTION WAS WHAT?

**THE COURT:** HE'S PART OF THIS AS WELL, RIGHT? HAS HE BEEN INDICTED?

**MR. HEMANN:** NO, YOUR HONOR.

**THE COURT:** IS THERE A PLAN ON INDICTING HIM?

**MR. HEMANN:** THERE IS NOT A PLAN ON INDICTING

MR. SEENO. AS SET FORTH IN THE PLEA AGREEMENTS, THIS PLEA WOULD COVER MR. SEENO. THE UNITED STATES DOES NOT INTEND TO PROSECUTE MR. SEENO FOR THE CONDUCT.

**THE COURT:** WASN'T HE THE PRESIDENT OF THIS COMPANY?

**MR. HEMANN:** AT THE TIME AT ISSUE HE WAS, IN FACT, THE PRESIDENT OF THE COMPANY. MR. SHAHID AT THE TIME WAS THE VICE PRESIDENT OF THE COMPANY. MR. SHAHID HAS PLED GUILTY AND HAS COOPERATED.

AND IN THE JUDGMENT OF THE UNITED STATES ATTORNEY'S OFFICE, WE DO NOT HAVE SUFFICIENT EVIDENCE TO CONVICT ALBERT SEENO JUNIOR. THERE'S AN ALBERT SEENO, II AND AN ALBERT -- ALBERT SEENO JUNIOR AND AN ALBERT SEENO, III.

ALBERT SEENO, III WAS THE PRESIDENT OF DISCOVERY SALES AT THE TIME OF THE EVENTS IN QUESTION, AND WE SIMPLY DO NOT HAVE ENOUGH SUFFICIENT EVIDENCE THAT WE BELIEVE THAT EITHER LEGALLY OR ETHICALLY WE COULD PROSECUTE MR. SEENO, III FOR THIS CONDUCT.

**THE COURT:** WHAT'S HIS CURRENT ROLE WITH THE COMPANY?

**MR. KEANE:** HE'S THE OWNER, YOUR HONOR.

**THE COURT:** SO WHY ISN'T HE HERE PLEADING GUILTY ON BEHALF OF HIS COMPANY?

**MR. GOODMAN:** HE HAS AUTHORIZED ME ON BEHALF OF THE COMPANY TO ENTER THE PLEA FOR HIM. NOT FOR -- FOR THE COMPANY PURSUANT TO A --

**THE COURT:** I UNDERSTAND. BUT IT'S HIS COMPANY AND

HE'S NOT WILLING TO COME HERE AND TAKE RESPONSIBILITY HIMSELF AS AN INDIVIDUAL, AS A PRESIDENT, FOR WHAT HIS COMPANY HAS DONE?

**MR. GOODMAN:** WELL, THE PLEA AGREEMENT REFLECTS THE RESPONSIBILITY BEING TAKEN BY DISCOVERY SALES --

**THE COURT:** I'M TALKING AS AN INDIVIDUAL, SHOW UP IN FEDERAL COURT AND TO TAKE RESPONSIBILITY FOR YOUR OWN COMPANY'S CONDUCT. I FIND THAT A LITTLE ODD.

**MR. GOODMAN:** YOUR HONOR, I HAVE ON A NUMBER OF OCCASIONS IN MY CAREER ENTERED CORPORATE PLEAS.

**THE COURT:** I'M SURE YOU HAVE. AND I'M JUST SAYING TO YOU THAT I DON'T FIND IT PARTICULARLY APPROPRIATE. I UNDERSTAND IT'S LEGAL.

**MR. GOODMAN:** COULD I MAKE ONE OTHER COMMENT?

**THE COURT:** YOU CAN MAKE WHATEVER COMMENTS YOU WANT.

**MR. GOODMAN:** I THINK WITH RESPECT TO MR. HEMANN'S LAST COMMENT ABOUT THE ABILITY OF THE PARTIES TO PREPARE EITHER A FURTHER JOINT SUBMISSION OR INDIVIDUAL SUBMISSIONS TO YOU WITH RESPECT TO THE FOUR-LEVEL DEPARTURE, THAT THAT WOULD BE THE WAY TO GO IF WE CANNOT COMPLETE THIS PROCESS TODAY.

I BELIEVE THAT BOTH SIDES CAN PROVIDE THE COURT WITH AS MUCH RATIONALE AS EXISTS FOR THE DEPARTURE. I MEAN, THERE ARE PROBLEMS WITH SECURITIZED MORTGAGE INSTRUMENTS. IT IS BASICALLY IMPOSSIBLE TO DETERMINE LOSSES DOWNSTREAM, AS HAS BEEN DEMONSTRATED OVER AND OVER AGAIN, AND IS WHY SOME OF

THESE BANKS THAT SOME PEOPLE THINK SHOULD HAVE BEEN INDICTED ARE NOT INDICTED BECAUSE THEY SLUFFED OFF THE DEBT.

BUT I BELIEVE WE CAN TOGETHER PROVIDE YOU WITH AS MUCH RATIONALE AS IS GOING TO EXIST FOR THE FOUR-LEVEL DEPARTURE.

**MR. HEMANN:** I WILL JUST ADD TO THAT POINT THAT MR. GOODMAN MADE ABOUT THE DIFFICULTY IN THIS RATHER UNIQUE CONTEXT AND PART OF THE EXPLANATION FOR WHY THERE HAVEN'T BEEN A LOT MORE OF THESE CASES, AND THIS CASE IS BOTH UNUSUAL AND A RESULT THAT I THINK THAT THE U.S. ATTORNEY'S OFFICE BELIEVES IS A VERY GOOD ONE; WELLS FARGO MADE A LOT OF MONEY HERE. THEY DIDN'T JUST -- IN FACT, THEY MAY NOT HAVE LOST ANY MONEY AT ALL THROUGH ITS -- THROUGH THEIR RELATIONSHIP WITH DISCOVERY SALES. AND IT COULD BE THE SAME WITH JP MORGAN CHASE, THAT THEY MADE MONEY BECAUSE THERE WERE ORIGINATION FEES, THERE WERE MANAGEMENT FEES, AND THEN THEY SOLD THE LOANS THAT THEY HAD ORIGINATED.

**THE COURT:** HOW MUCH DID DISCOVERY SALES MAKE?

**MR. HEMANN:** WELL, IRONICALLY, IN THIS CASE FOR THESE PARTICULAR -- AND THIS IS -- I'LL PREFACE THIS BY SAYING THAT THIS IS THE GOVERNMENT'S CONTENTION AND NOT NECESSARILY SOMETHING THAT THE DISCOVERY SALES AGREES WITH. THE PURPOSE OF THIS SCHEME, FROM THE GOVERNMENT'S PERSPECTIVE, YOUR HONOR, WAS THAT IT ALLOWED DISCOVERY TO STAY IN BUSINESS OVER A DIFFICULT ECONOMIC PERIOD OF TIME. AND IT ESSENTIALLY STAVED OFF WHAT WOULD HAVE BEEN A POTENTIAL BANKRUPTCY OR AN ENORMOUS

LOSS SITUATION AND ALLOWED DISCOVERY TO CONTINUE TO MAKE MONEY -- OR BORROW MONEY OVER THIS PERIOD OF TIME AND CONTINUE TO BUY HOUSES.

IRONICALLY, WHAT DISCOVERY WAS DOING HERE, WAS IT WAS ACTUALLY SHELLING MONEY OUT TO BUYERS WHO COULD NOT HAVE AFFORDED HOMES AND SHOULD NOT HAVE BEEN BUYING HOMES, AND IT WAS SPENDING THAT MONEY OUT OF POCKET FOR THE ULTIMATE BENEFIT OF CONTINUING TO BE ABLE TO BORROW MONEY FROM BANKS TO BUILD MORE HOUSES.

SO IT BECOMES EXTREMELY DIFFICULT TO FIGURE OUT -- I'M NOT AT ALL TRYING TO BE FLIP WITH YOUR HONOR OR TRYING TO, YOU KNOW, MINIMIZE THE COURT'S QUESTIONS. IT IS VERY DIFFICULT TO FIGURE OUT BECAUSE ON THESE DEALS, ON THESE HOUSES THAT ARE THE SUBJECT OF THIS CASE, I SUSPECT THAT DISCOVERY LOST A LOT OF MONEY. IT MADE A LOT OF MONEY IN THE FUTURE, YOU KNOW, INTO '10, '11 AND '12 BECAUSE IT STAYED IN BUSINESS. AND IT BORROWED A BUNCH OF ADDITIONAL MONEY TO BUY MORE HOUSES AND SELL MORE HOUSES, TO BUY MORE PROPERTY, BUILD MORE HOUSE AND SELL MORE HOUSES WHEN THE MARKET CAME BACK.

AS THE COURT IS ACUTELY AWARE, YOU'VE GOT A BUNCH OF PLAYERS IN THE INDUSTRY AT THE TIME WHO ARE EITHER SURVIVING, LIKE DISCOVERY WAS, OR MAKING MONEY LIKE, WELLS FARGO AND JP MORGAN CHASE WERE, AND THE LOSERS ARE WAY DOWNSTREAM -- THE LOSERS ARE THE AMERICAN PEOPLE, ESSENTIALLY, YOUR HONOR.

ALL THAT BEING SAID, IT IS EXTREMELY DIFFICULT TO FIGURE

OUT WHERE -- HOW MUCH THOSE -- HOW MUCH WAS GAINED AND LOST FOR THE PURPOSES OF THE SENTENCING GUIDELINES, PARTICULARLY USING THE FORMULA THAT THE NINTH CIRCUIT HAS SAID WE ARE TO USE.

AGAIN, I AM NOT AT ALL SAYING THE COURT'S QUESTIONS AREN'T VALID, AND THERE ARE QUESTIONS I HAVE STRUGGLED WITH, MR. GOODMAN AND MR. KEANE AND MANY OTHER LAWYERS HAVE STRUGGLED WITH AS WELL, BUT WE CAN AND WILL DO A BETTER JOB FOR YOUR HONOR IN TERMS OF PUTTING SOME MEAT ON THE BONES HERE.

**MR. KEANE:** YOUR HONOR, I WOULD JUST LIKE TO POINT OUT ALSO THAT DURING THIS TIME PERIOD THERE WERE ABOUT A THOUSAND HOME SALES, LESS THAN HALF HAD INCENTIVE PROGRAMS. AND THEN SOME PORTION OF THAT THERE WERE NONDISCLOSURE ISSUES. WE SHOULD KEEP THIS IN PERSPECTIVE.

AND I WOULD REITERATE FOR MR. GOODMAN, WE WOULD CERTAINLY LIKE THE OPPORTUNITY, IF THE COURT CAN GIVE US SOME TIME, TO SUBMIT JOINT BRIEFING WITH EXHIBITS, WHATEVER WOULD BE NECESSARY, TO ESTABLISH THE BASIS FOR THE DOWNWARD DEPARTURE.

WE SHOULD BE ABLE TO DO THAT HOPEFULLY HERE IN RELATIVELY SHORT ORDER.

**THE COURT:** HOW MUCH TIME DO YOU WANT?

**MR. KEANE:** A MONTH? THREE WEEKS?

**MR. HEMANN:** I'VE GOT -- UNFORTUNATELY I START A TRIAL NEXT WEDNESDAY WITH JUDGE BREYER.

**THE COURT:** MR. HEMANN, YOU KNOW I'M IN TRIAL. SO A MONTH IS NOT --

**MR. HEMANN:** YES.

**THE COURT:** ANOTHER THING THAT IS NOT LOST ON ME IS YOU ALL HAVE BEEN DOING THIS FOR QUITE A SIGNIFICANT AMOUNT OF TIME. SO YOU ARE ALL INTIMATELY AWARE OF ALL OF THE FACTUAL BACKGROUND, AND YOU JUST HAVEN'T GIVEN IT TO ME.

I HAVE TAKEN PLEAS OF ALL THE SMALL PLAYERS. I'VE TAKEN SHAHID'S PLEA. AND THIS WAS, THIS WAS TO BE THE TOP OF THE PILE, SO TO SPEAK, BUT YOU HAVE NOT GIVEN ME ENOUGH. THAT IS THE BASIC PROBLEM, AND I AM NOT GOING TO RUBBER STAMP THIS.

**MR. KEANE:** WE DIDN'T EXPECT THAT YOU WOULD, YOUR HONOR.

SO WE ARE CLEAR, THE ADDITIONAL SUBMISSION WOULD BE RELATED TO THE BASIS FOR THE DOWNWARD DEPARTURE?

**THE COURT:** I DON'T THINK THERE IS A DISAGREEMENT WITH RESPECT TO THE OTHER CALCULATIONS. I MEAN, IF THERE ARE -- AND YOU HAVE NOT GIVEN ME ANYTHING REALLY ON 3553 FACTORS. VERY LITTLE IN THAT REGARD. SO MY FOCUS HAS BEEN SOLELY WITH THE CALCULATIONS.

THE AMERICAN PEOPLE ARE NOT -- RIGHTLY SO, ARE VERY FRUSTRATED WITH THE CONDUCT WHICH WAS CRIMINAL THAT LED TO THE FINANCIAL DISASTER IN THIS COUNTRY. AND I UNDERSTAND THE LEGAL DIFFICULTIES, BUT THERE HAS TO BE SOME MANNER OF ACCOUNTABILITY.

AND THE PROBLEM THAT I HAVE WITH THE PRESIDENT NOT SHOWING UP HERE IS IT SHOWS AN UNWILLINGNESS TO PUBLICLY TAKE ACCOUNTABILITY FOR HIS COMPANY'S ACTIONS. AND THAT SAYS SOMETHING TO ME ABOUT WHETHER OR NOT HE'S IN FACT -- WHETHER OR NOT THE COMPANY'S, IN FACT, ENTITLED TO THE TWO-LEVEL ACCEPTANCE.

LIKE I SAID, I KNOW IT'S LEGAL, I JUST DON'T THINK IT'S A GOOD SHOWING OF WILLINGNESS TO BE ACCOUNTABLE.

**MR. KEANE:** CAN I SPEAK TO THAT?

I HAVE DONE CORPORATE PLEAS ALSO. IT IS NOT UNUSUAL, IN OUR EXPERIENCE, TO HAVE A REPRESENTATIVE, AS THE COURT PROBABLY KNOWS, TO ENTER A GUILTY PLEA. AND I ASSURE YOU THAT OWNERSHIP HAS BEEN VERY INVOLVED IN THESE NEGOTIATIONS --

**THE COURT:** I CAN TELL YOU THAT THE LAST ONE I TOOK IN MY MDL, SOMEONE CAME HERE FROM KOREA AND TOOK RESPONSIBILITY.

**MR. KEANE:** UNDERSTOOD, YOUR HONOR.

**THE COURT:** ALL RIGHT. YOU WANT A MONTH?

**MR. HEMANN:** YES, YOUR HONOR.

**THE COURT:** IF YOU CAN HAVE SOMETHING FILED BY THE 8TH, I CAN SEE YOU ON THE 22ND.

**MR. KEANE:** SAME TIME, YOUR HONOR, ON THE 22ND?

**THE COURT:** YOU KNOW, I DO WANT TO SAY, I APPRECIATE YOU BEING FLEXIBLE WITH OUR CALENDAR. I KNOW IT WENT BACK AND FORTH TODAY. I WAS SUPPOSED TO BE -- WE WERE SUPPOSED TO HAVE

AN EVIDENTIARY HEARING IN MY TRIAL SO EVERYTHING -- WE CAN DO IT AGAIN IN THE MORNING IF THAT WORKS BETTER, AT 9:30 IN THE MORNING.

**MR. HEMANN:** THAT WOULD BE FINE, YOUR HONOR.

**MR. KEANE:** THAT'S FINE, YOUR HONOR.

**THE COURT:** BUT THE TRIAL COMES FIRST. SO THAT'S -- IF YOU GET A NOTE THAT WE HAVE TO SWITCH THE TIME, IT'S BECAUSE OF THE TRIAL.

**MR. KEANE:** WE UNDERSTAND, YOUR HONOR.

**THE COURT:** ALL RIGHT. I LOOK FORWARD TO YOUR SUBMISSION.

**MR. HEMANN:** THANK YOU, YOUR HONOR.

**MR. KEANE:** THANK YOU, YOUR HONOR.

**THE COURT:** THANK YOU.

(PROCEEDINGS CONCLUDED AT 11:30 P.M.)

## CERTIFICATE OF REPORTER

I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

SATURDAY, JUNE 4, 2016